IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-01406-PSF-MEH

DEBRA BENTON,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS, County of Adams, Colorado,
JOHN LEFEBVRE, as the County Treasurer of Adams County, Colorado,

    Defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 50), filed on July 2, 2007.  Plaintiff filed a response on August 31, 2007 (Dkt. # 76), and defendant replied on September 21, 2007 (Dkt. # 80).  Having reviewed the briefing, the record, and the applicable law, the Court enters the following order.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Plaintiff Debra Benton, the nonmovant.  Plaintiff is a former employee of the Adams County Treasurer's Office.  Final Pretrial Order (Dkt. # 77) at 5.  She worked for the Treasurer's Office from 1971 to 1986 and then again from March 1996 until her termination in July 2004, at which time she held the position of Accounting Specialist. *Id.* at 2; Am. Compl. (Dkt. # 21) ¶ 28.  Defendant John LeFebvre was elected Adams County Treasurer in November 2002 and took office in January 2003.  Final Pretrial

Order at 2. LeFebvre's predecessor, Helen Hill, was precluded by term limits from running for reelection in 2002. *Id.*

After LeFebvre was elected but shortly before he took office, he had a meeting at his home with plaintiff and Paul Fox, a resident of Adams County whom plaintiff describes as her "liaison to the press." Pl.'s Resp. at 7; *see* Fox Aff. ¶¶ 1 & 7, Ex. 12 to Pl.'s Resp.; Benton Aff. ¶ 5, Ex. 13 to Pl.'s Resp. During that meeting, LeFebvre allegedly stated that he intended to terminate three Treasurer's Office employees—Judith Kahle, Don Ponzio, and Linda Delay—who had supported Hill and had campaigned on behalf of Clyde Spero, LeFebvre's opponent in the 2002 election. Fox Aff. ¶ 7; Benton Aff. ¶ 5; Benton Depo., Ex. 2 to Pl.'s Resp., at 51–53. According to plaintiff, LeFebvre subsequently informed her and Fox that he planned to terminate these employees by stating that their positions were being eliminated. Fox Aff. ¶ 9; Benton Aff. ¶ 7. LeFebvre eliminated the positions of three employees in early 2003 when he took over as Treasurer. Benton Depo. at 138.

In May 2003 plaintiff "filed a written complaint with . . . the Adams County Grand Jury, alleging misconduct during former Treasurer Hill's term in office." Am. Compl. ¶ 20; Benton Depo. at 115. In August 2003 plaintiff testified before the grand jury regarding the allegations, Orig. Compl. (Dkt. # 1) ¶ 14, and LeFebvre was aware of and "supported" her decision to pursue giving information to the grand jury. Benton Depo. at 116; LeFebvre Depo., Ex. 1 to Pl.'s Resp., at 136–37. Plaintiff did not testify as to any wrongful conduct by LeFebvre and did not make any disparaging remarks about him before the grand jury. Benton Depo. at 121–22. In May or June 2004,

LeFebvre received a copy of plaintiff's grand jury testimony. *Id.* at 126. Also in June 2004, plaintiff overheard one of her co-workers on the phone threatening to shoot a taxpayer if he did not pay his taxes. *Id.* at 123–24. She reported the incident to the human resources department and told Paul Fox about it. *Id.* at 125. Plaintiff did not inform LeFebvre she had spoken to Paul Fox, and she does not know whether Fox spoke to anyone else in the public or the press about the incident. *Id.* at 129–30.

In early 2004, LeFebvre was engaged in efforts to secure the passage of a bill before the Colorado General Assembly that in pertinent part prohibited counties from operating formerly private businesses. LeFebvre Depo. at 148–49; Ex. 6 to Pl.'s Resp. As part of those efforts, LeFebvre asked plaintiff to testify before the General Assembly regarding the operation of oil wells by county officials. Final Pretrial Order at 5. LeFebvre prepared handwritten testimony for plaintiff to read that noted the risk of legal liability to the county in operating such a business. Ex. 3 to Pl.'s Resp. According to plaintiff, she felt pressured to testify and did not agree with LeFebvre's prepared statement. Benton Depo. at 59–61. When she told LeFebvre over the phone that she did not want to testify, LeFebvre purportedly hung up on her. *Id.* at 64. The bill supported by LeFebvre was signed into law on March 17, 2004. Ex. 7 to Pl.'s Resp.

Plaintiff's employment was terminated on July 22, 2004. Ex. D to Def.s' S.J. Br. In the termination letter, LeFebvre informed plaintiff he had concluded that her position was no longer necessary and was being eliminated. *Id.*

Plaintiff filed this lawsuit on July 19, 2006 against LeFebvre and the Adams County Board of County Commissioners. In her original complaint, she asserted

causes of action for age discrimination and wrongful discharge in violation of Colorado public policy. She amended her complaint on November 13, 2006 to add claims of violations of her First and Fifth Amendment rights under 42 U.S.C. § 1983. Am. Compl. ¶¶ 31–36. Plaintiff subsequently voluntarily dismissed her age discrimination and wrongful discharge claims. *See* Dkt. ## 42, 72. Accordingly, the only claims remaining involve the alleged violations of plaintiff's First and Fifth Amendment rights. Defendants have moved for summary judgment on those claims.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate under F.R.Civ.P. 56(c) only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the non-moving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). If the moving party meets its initial burden of showing "'an absence of evidence to support the nonmoving party's case,' . . . the burden shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 322, 325). The nonmoving party "must go beyond the pleadings" and present admissible evidence "'on which the jury could reasonably

find for the plaintiff.'" *Id.* (quoting *Celotex*, 477 U.S. at 322, and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.  ANALYSIS

### A.  Statute of Limitations

Defendants contend plaintiff failed to bring her two § 1983 claims within the applicable limitations period and that they therefore must be dismissed. The applicable statute of limitations on § 1983 claims is determined by state law, and Colorado's residual two-year limitations period applies to this case. *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993); C.R.S. § 13-80-102(i). The question of when a cause of action accrues and when the limitations period accordingly begins to run is governed by federal law, which provides that "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quotations omitted). Thus, a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quotations omitted).

Defendants contend that Benton's First and Fifth Amendment claims, which were filed on November 13, 2006, are time-barred because they were brought more than two years after she was terminated on July 22, 2004 and they do not "relate back" to the allegations made in her original complaint, which was filed within two years of her termination. Under F.R.Civ.P. 15(c)(2), "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or

attempted to be set forth in the original pleading." The rationale behind this rule is that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (citation omitted). As long as there is a "factual nexus" between the original and amended complaints, the amended claim "is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983) (citation omitted).

The law governing application of the relation-back doctrine is aptly summarized as follows:

> As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts. For relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery. On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences. It is a matter committed to the district court's sound discretion to decide whether a new claim arises out of the same transaction or occurrence.

*Kidwell v. Bd. of County Comm'rs of Shawnee County*, 40 F. Supp. 2d 1201, 1217 (D. Kan. 1998), *aff'd*, 189 F.3d 478 (10th Cir.), *cert. denied*, 528 U.S. 1064 (1999) (internal citations and quotations omitted).

In the present case, plaintiff's First Amendment claim arises out of the same general set of facts discussed in her original complaint. In her original complaint, plaintiff alleged that Lefebvre "eliminated the positions of all those persons whom he felt were loyal to the previous Treasurer," Orig. Compl. ¶ 11, that Lefebvre terminated

plaintiff after learning that she testified before the grand jury about improprieties that had occurred in the County Treasurer's office, *id.* ¶¶ 14–19, and that she was terminated in retaliation "for exercising her legal rights." *Id.* ¶ 21.  These same allegations are at least a partial basis for plaintiff's First Amendment claim, in which plaintiff claims she was terminated for exercising her First Amendment rights of free speech, and were sufficient to put defendants on notice of such a claim.  Because the allegations in plaintiff's amended complaint relating to her First Amendment claim merely amplify the facts alleged in her original complaint and do not state a claim based on events or transactions wholly separate from those described in her original complaint, plaintiff's amended complaint "relates back" to her original complaint with respect to her First Amendment claim, which is not time-barred.

The same cannot be said, however, of plaintiff's Fifth Amendment claim.  In her amended complaint, plaintiff alleges she was denied due process because the "manner of her termination deprived Plaintiff of her liberty and property interests as protected by the Fifth Amendment."  Am. Compl. ¶ 32.  The claim is apparently based on LeFebvre's alleged failure to comply with the provisions of the Adams County Employee Manual governing reductions in force because he fired plaintiff rather than other, less senior employees in the Treasurer's Office.  *See* Pl.'s Resp. at 9; Employee Manual, Ex. 19 to Pl.'s Resp., § 2.6(2); LeFebvre Depo. at 104–14.  However, nowhere in her original complaint does plaintiff discuss the underlying "manner" of her termination in any way beyond merely alleging that she was notified on July 22, 2004 that her position was being eliminated.  Orig. Compl. ¶ 19.  Significantly, there are no allegations, express or

7

implied, relating to whether she had a protected property interest in her employment such that she was entitled to due process; indeed, the employee handbook is not even mentioned. Rather, the allegations in the original complaint involve only the allegedly unlawful, retaliatory reasons for her termination.

Because plaintiff's original complaint does not describe any conduct, transactions or occurrences that would support a claim that plaintiff's termination violated her due process rights, and because the facts alleged in the original complaint could not have reasonably put defendants on notice of such a claim, plaintiff's amended complaint does not relate back to her original complaint with respect to the due process claim. Moreover, based on the allegations underlying plaintiff's due process claim, the Court finds that plaintiff's cause of action for violation of her Fifth Amendment rights accrued on the date of her termination. Accordingly, because the claim was not brought within two years of the date it accrued, plaintiff's due process claim is dismissed as time-barred.

### B.     First Amendment Claim

Although plaintiff's First Amendment claim was brought within the applicable statute of limitations, defendants alternatively argue they are entitled to summary judgment on this claim on its merits. Plaintiff alleges she was terminated in retaliation for exercising her First Amendment right of free speech. To prevail on such a claim, an employee must establish (1) the speech involved a matter of public concern, (2) the employee's interest in engaging in the speech outweighed the employer's interest in regulating the speech, and (3) the speech was a substantial motivating factor behind

the employer's decision to take an adverse employment action against the employee. *Baca v. Sklar*, 398 F.3d 1210, 1218–19 (10th Cir. 2005) (citation omitted). If the employee establishes these elements, she prevails unless the employer proves by a preponderance of the evidence that it would have taken the same action in the absence of the protected speech. *Id.* at 1219 (citation omitted). The first two elements are questions of law, while the third element is ordinarily a question of fact for the jury. *Id.* (citation omitted).

Defendants contend that plaintiff's speech did not involve a matter of public concern and that plaintiff has failed to raise a genuine issue of material fact with respect to the third element, *i.e.*, plaintiff has failed to present evidence of a causal link between her allegedly protected speech and the retaliatory conduct. The Court need not address whether plaintiff engaged in speech on a matter of public concern because, even assuming she did, the Court concludes no reasonable jury could find plaintiff's speech was a substantial motivating factor in LeFebvre's decision to terminate her.

The Tenth Circuit has discussed at length the causation requirement in a First Amendment retaliation case, holding the employee need not show the protected speech was the "sole" cause or even a "but-for" cause of the adverse action, but rather must show that the protected speech "played a substantial part in the employer's decision to adversely alter the employee's conditions of employment." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005) (emphasis and citations omitted). The Tenth Circuit continued:

> To withstand summary judgment at step three, therefore, an employee must produce evidence linking the employer's action to the employee's speech. Speculation or hunches amidst rumor and innuendo will not suffice. Nor can a plaintiff sustain his burden at step three simply by showing that the elimination of the protected activity may have been welcomed by the defendants.
>
> Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive. But temporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision. An employer's knowledge of the protected speech, together with *close* temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment. Other evidence of causation may include evidence the employer expressed opposition to the employee's speech or evidence the speech implicated the employer in serious misconduct or wrongdoing. On the other hand, evidence such as a long delay between the employee's speech and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link.

*Id.* at 1188–89 (internal citations omitted) (emphasis in original).

Plaintiff asserts she engaged in the following three instances of protected speech (or refusal to speak) that were the alleged basis of her termination: (1) she testified before a grand jury about wrongdoing in the Treasurer's Office by LeFebvre's predecessor, Helen Hill; (2) she informed a member of the public that she had heard a Treasurer's Office employee threaten to shoot a taxpayer; and (3) she refused to comply with LeFebvre's request to testify before the Colorado General Assembly with respect to a bill he supported.

Plaintiff's testimony before the grand jury occurred in August 2003, almost one year before she was fired. As noted above, plaintiff's testimony related to her allegations of misconduct by Helen Hill, not LeFebvre. Moreover, Benton stated in

10

her deposition that LeFebvre was "very much for" her testifying about such misconduct. Benton Depo. at 116. In addition, there appears to be no dispute that LeFebvre was aware of plaintiff's grand jury testimony shortly before or after it occurred in August 2003. LeFebvre Depo. at 136–37. The lengthy delay between plaintiff's testimony and her termination, along with the fact that her testimony involved no allegations against LeFebvre, forecloses any inference of a retaliatory motive.

Plaintiff makes much of the fact that LeFebvre apparently received a copy of the transcript of her grand jury testimony in May or June 2004, which was "approximately the same time that she spoke out about *his* employee threatening to shoot a tax payer." Pl.'s Resp. at 7 (emphasis in original). She argues that "[e]ven if he was not concerned that Plaintiff mentioned him in the Grand Jury proceedings, the jury in this case could reasonably infer that he terminated Plaintiff peremptorily, in anticipation that she might take further action to expose the threats of violence made by his subordinates." *Id.* However, when LeFebvre saw a copy of her testimony is not persuasive given that he had been aware of the subject matter of her testimony—and therefore of her willingness to speak out about misconduct in the Treasurer's Office—for quite some time prior to receiving the transcript.

Plaintiff also contends that her statement to Paul Fox about the employee's threat itself constitutes protected speech made as a citizen to the public and the press because Mr. Fox allegedly "acted as her liaison to the press." Pl.'s Resp. at 6–7. However, as noted above there is no evidence Mr. Fox ever actually informed the press about plaintiff's accusations and, more importantly, no evidence that LeFebvre knew

11

plaintiff had discussed the matter with a member of the public or the press when he fired her. Benton Depo. at 129–30; LeFebvre Depo. at 165–66. Any argument that LeFebvre terminated her employment based on concerns that she would do so is pure speculation and is insufficient to survive summary judgment. Thus, assuming plaintiff's statements to Mr. Fox are protected, as a matter of law they were not a "substantial motivating factor" behind her termination.

Plaintiff next contends LeFebvre fired her in retaliation for her refusal to testify before the General Assembly regarding a bill he supported. To the extent defendants argue plaintiff's refusal to speak cannot constitute protected speech for First Amendment purposes, the argument fails, as "[t]he First Amendment protects the right to refrain from speaking just as surely as it protects the right to speak." *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999) (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). However, again there is no indication that plaintiff's refusal to testify was a substantial motivating factor behind LeFebvre's decision to terminate her.

It is unclear from the record exactly when plaintiff informed LeFebvre she did not want to testify, although based on the bill's history it appears to have occurred sometime in February 2004, approximately five months before plaintiff was fired. *See* Ex. 7 to Pl.'s Resp. Such a five-month time lapse, in and of itself, is insufficient to give rise to an inference of retaliatory motive. *Maestas*, 416 F.3d at 1188. Nor has plaintiff presented other evidence that would allow such an inference to be drawn. Plaintiff claims that LeFebvre became "hostile" toward her after she refused to testify, but the only specific example given is that LeFebvre did not give her a "merit raise"

in 2004 like he did in 2003. Pl.'s Resp. at 8. According to the record, plaintiff received a six percent raise in June 2003, which LeFebvre had classified as a "merit increase." Ex. 5 to Pl.'s Resp. Plaintiff received a four percent raise in April 2004. Ex. 17 to Pl.'s Resp. Given that plaintiff in fact received an annual raise in 2004, without more the Court finds nothing probative about the fact that plaintiff's 2004 raise was slightly smaller than her 2003 raise and that it was not classified as a "merit increase." Plaintiff's assertion that the smaller raise was related to her refusal to testify is based on mere speculation and is insufficient to allow a jury to draw an inference of a retaliatory motive.

Finally, plaintiff contends there is evidence that the purported reason for her termination—that her position was being eliminated—was pretextual because it was the same reason given when LeFebvre fired members of his opponent's campaign staff in early 2003. The relevance of the termination of three other employees a year-and-a-half before plaintiff was fired is questionable at best. Moreover, while there may be some evidence that LeFebvre fired those three employees because they supported his political opponents, there is no evidence that plaintiff had supported those candidates. Indeed, plaintiff testified that she helped LeFebvre get elected in the first place. Benton Depo. at 138. Thus, even assuming plaintiff has presented evidence that LeFebvre had a plan to "eliminate positions of politically disloyal employees," Pl.'s Resp. at 8, there is simply no evidence either that plaintiff fell into that category or that LeFebvre had any reason to believe that was the case.

In sum, plaintiff has failed to present evidence of a causal link between any protected speech and LeFebvre's allegedly retaliatory conduct. The Court holds that a reasonable jury could not find Benton's exercise of her First Amendment rights was a "substantial motivating factor" behind LeFebvre's decision to eliminate plaintiff's position and terminate her employment. Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment (Dkt. # 50) is GRANTED, and plaintiff's claims are DISMISSED with prejudice.

DATED:  November 14, 2007

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge